**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| SIGNATURE FINANCIAL LLC,<br><br>     *Plaintiff,*<br><br> v.<br><br>SHRI VIGHNESHWAR LLC, et al.,<br><br>     *Defendants.* | CIVIL ACTION<br>NO. 23-310 |

**PAPPERT, J.**                 **February 9, 2024**

<u>**MEMORANDUM**</u>

   Signature Financial seeks a default judgment against all twenty Defendants[1] based on breach of contract and replevin claims stemming from a commercial loan agreement executed by some of the Defendants, with guarantees executed by others. Signature seeks the outstanding loan amount and a judgment awarding it possession of the collateral pledged pursuant to the loan agreement.  For the following reasons, the Court grants Signature's motion as to the outstanding debt, but denies without prejudice their motion seeking replevin of collateral.

---

[1]  Shri Vighneshwar LLC, Shri Ballaleshwar LLC, Shri Chintamani LLC, Shri Girijatmaj LLC, Shri Mayureshwar LLC, Shri Siddhatek LLC, Shri Varadavinayak LLC, Shri Mahaganapati LLC, Jignesh N. Pandya, Mital J. Pandya, Rohan Management Services, Inc., Ronak Foods Management, LLC, Sri Prathamesh LLC, 401 Kokomo LLC, 839 Greenwood LLC, 1520 Shadeland LLC, 2950 Madison LLC, 3605 Kentucky LLC, 3807 Washington LLC and 6742 82nd Street LLC.

I

In February 2018, Vendor Alliance Capital, Inc. (VAC) and the Borrowers[2] entered into a loan agreement in the amount of $2,790,000 so the Borrowers could acquire eight Checkers Drive-In Restaurants in Pennsylvania, New Jersey and Delaware.  (Compl. ¶ 31).  As part of the deal, VAC had the Guarantors[3] each execute a separate guarantee.  (*Id*. ¶¶ 254, 269, 284, 299, 314, 329, 346, 363, 380, 397, 414, 431).

Pursuant to the loan agreement, the Borrowers executed eight separate Term Loan Notes totaling various amounts and requiring certain monthly payments, (*Id*. ¶¶ 32–47), and VAC was given a first priority security interest in the collateral to the agreement, which consisted of "substantially all of the tangible and intangible assets owned by the Borrowers."  (*Id*. ¶ 48).  Later, VAC assigned all of its rights in the loans, loan agreements, collateral and guarantees to Signature, and Signature became VAC's successor in interest.  (*Id*. ¶ 49).  Signature perfected its security interest in the collateral by filing UCC-1 Financing Statements with the Secretaries of State in Pennsylvania, New Jersey and Delaware.  (*Id*. ¶ 51).

In April 2020, Signature and the Borrowers entered into eight separate modification agreements whereby Signature agreed to defer all principal and interest payments due under Notes 1, 3, 4, 5, 6 and 8 for the months of April, May and June of 2020.  (*Id*. ¶ 52).  Signature also agreed to defer all principal and interest payments due

---

[2]     Vighneshwar LLC, Ballaleshwar LLC, Chintamani LLC, Girijatmaj LLC, Mayureshwar LLC, Siddhatek LLC, Varadavinayak LLC and Mahaganapati LLC, collectively, "Borrowers."

[3]     Jignesh N. Pandya, Mital J. Pandya, Rohan Inc., Ronak LLC, Prathamesh LLC, Kokomo LLC, Greenwood LLC, Shadeland LLC, Madison LLC, Kentucky LLC, Washington LLC and 6742 82nd St. LLC, collectively, "Guarantors."

under Notes 2 and 7 for March, April, May and June 2020.  (*Id.*)  The Borrowers agreed

to resume making full principal and interest payments again in July 2020.  (*Id.* ¶ 53).

The Borrowers also agreed to pay Signature, on the maturity dates of the notes, all

principal, interest and other amounts due, including the additional amount of

outstanding principal accrued because the Borrowers did not make payments during

the deferral period.  (*Id.*)

      The Borrowers defaulted by failing to make payments for November and

December 2022.  Signature then declared the entire balance due, (*Id.* ¶¶ 61, 65, 69, 73,

76, 81, 85, 88), which as of January 10, 2023, amounted to $2,052,711.33, plus interest

at 1.5% per month ($983.79 per diem) going forward.  (*Id.* ¶ 90).  Signature made a

demand on the Borrowers for repayment, but to no avail.  (*Id.* ¶¶ 96, 104, 112, 120, 128,

136, 144, 152).  Signature then made a demand on the Guarantors, but they also failed

to pay up.  (*Id.* ¶¶ 263, 278, 293, 308, 323, 340, 357, 374, 391, 408, 425, 442).  Signature

demanded return of the collateral, but the Borrowers failed honor that request as well.

(Decl. ¶ 103).

      Signature filed a twenty-eight count complaint on January 25, 2023, asserting

breach of contract claims against the Borrowers and Guarantors and seeking replevin

of the collateral.  (ECF No. 1).  Initially, Signature was only able to serve one

Defendant, Shri Mahaganapati, LLC.  (ECF No. 8).  Despite diligent efforts, however, it

could not serve the other Defendants.  (ECF No. 9).  The Court allowed Signature leave

to serve the remaining Defendants by mailing and posting, which Signature did

pursuant to the Court's Order on September 14, 2023.  *See* (ECF Nos. 11, 12).  After the

Defendants failed to timely respond, Signature sought and received an entry of default. (ECF Nos. 14, 15).  Signature now seeks a default judgment.

## II

Before the Court can enter default judgment, it must find that process was properly served.  *Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 19 (3d Cir. 1985).  While not easy at first, Signature properly served all Defendants.  It served Shri Mahaganapati LLC, through its registered agent, Krupa Patel, on April 12, 2023.[4] (ECF No. 8).  After multiple unsuccessful efforts to serve the other Defendants, Signature was granted leave to complete service through mailing and posting.  (ECF No. 11).  Signature sent via first class and certified mail, return receipt requested, the summons, complaint and Court's Order to all other Defendants at 8 Woodland Road, Newtown, PA, and 121 Friends Lane, Suite 301-302, Newtown, PA.  Signature's independent investigation made it reasonable to believe mailing and posting at those addresses would give the Defendants notice of the proceedings against them.[5]

---

[4]     Krupa Patel is the registered agent of Shri Mahaganapati LLC.  *See* Department of State: Division of Corporations, (last accessed Feb. 8, 2024), https://icis.corp.delaware.gov/Ecorp/EntitySearch/NameSearch.aspx.  The Court takes judicial notice of the information available on the Delaware state website.  *See Vanderklok v. United States*, 868 F.3d 189, 205 n.16 (3d Cir. 2017); *Morgan v. Pennsylvania*, No. 23-872, 2023 WL 6461245, at *2 (M.D. Pa. Oct. 2, 2023) ("[T]he Third Circuit has followed the prevailing wisdom that documents available on government websites are public records.").

[5]     Signature consulted loan documents, voter and property tax records, and the returned acknowledgements of receipt of certified mailings of the Summons and Complaint signed for by Mital Pandya.  (ECF No. 11).  All sources indicated Mital, a guarantor, and Jignesh, the sole member of all the LLC borrowers and guarantors, continued to reside at 8 Woodland Road.  Moreover, Signature attempted service at 121 Friends Lane in Newtown, the office listed for businesses in the loan documents and on the Pennsylvania, New Jersey and Indiana Department of State websites.  (*Id.*)

4

Signature then filed an affidavit of service of its mailing and posting with the Court. (ECF No. 13).

III

"[W]hen entry of a default judgment is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." *D'Onofrio v. Il Mattino*, 430 F. Supp.2d 431, 437 (E.D. Pa. 2006) (citations and internal quotation marks omitted).

On a motion for default judgment, a plaintiff need only make a *prima facie* showing of personal jurisdiction. *D'Onofrio v. Il Mattino*, 430 F. Supp.2d 431, 439 (E.D. Pa. 2006). All Defendants except Chintamani and Mahaganapati are either Pennsylvania LLC's, operate a principal place of business in Pennsylvania or live in Pennsylvania. (Compl. ¶¶ 5–7, 9–12, 14–25). While Chinatmani is a New Jersey LLC with a principal place of business in Camden and Mahaganapati is a Delaware LLC with a principal place of business in Wilmington, UCC financing statements with respect to the collateral indicate both maintain a mailing address in Pennsylvania—121 Friends Lane, Newtown, PA—suggesting "certain minimum contacts with . . . [Pennsylvania] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316–17 (3d Cir. 2007) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)); *see generally Hardwick v. Consumer Guardian Specialists, LLC*, No. 20-60, 2021 WL 1152739, at *9 (W.D. Pa. Mar. 26, 2021); (ECF 1-13, at 4, 10).

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship and the amount in controversy exceeds $75,000.  Signature is an LLC whose sole member is Signature Bank, which is incorporated under New York law and maintains its corporate headquarters in New York City.  All Defendants are citizens of Pennsylvania, and the amount in controversy is over $2 million.

IV

"A consequence of the entry of a default judgment is that the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (citations and internal quotation marks omitted).  The Court need not, however, accept the moving party's legal conclusions or allegations relating to the amount of damages.  *Id.*  Therefore, before granting a default judgment, the Court must determine whether a legitimate cause of action exists, as a party in default does not admit mere conclusions of law. *DirecTV, Inc. v. Asher*, No. 03-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing 10A Wright & Miller, Federal Practice and Procedure § 2688, at 63 (3d ed. 1998)).

A

Signature alleges breach of contract claims against the Borrowers and Guarantors for breach of the loan agreements and guarantees.  To establish a breach of

contract claim under New York law,[6] a plaintiff must establish: (1) the existence of a contract; (2) performance by the party seeking recovery; (3) breach by the other party; and (4) damages suffered as a result of the breach.  *See Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011).

Signature sufficiently alleges the elements of a breach of contract claim. The Borrowers and Guarantors entered into the loan agreements and guarantees, Signature performed pursuant to those agreements, which the Borrowers and Guarantors breached by not paying back the loan, resulting in damages, namely, the total unpaid amounts.

B

Signature has also set forth a valid cause of action for replevin of collateral.[7] "The action of replevin is founded upon the wrongful taking and detention of property

---

[6]     The Loan Agreements and Guarantees are governed by New York law.  *See* (ECF 1-3, at 24). Pennsylvania courts only ignore a contractual choice of law provision if that provision conflicts with strong public policy interests.  *Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 56 (3d Cir. 1994).  In this case, no such public policy issues are infringed.

[7]     Signature does not allege New York law applies to the replevin claim.  (ECF No. 16-1, at 27–28).  Federal courts sitting in diversity cases apply the choice of law rules of the state in which they sit.  *Klaxon Co. v. Stentor Electric Mfg. Co., Inc.*, 313 U.S. 487 (1941).  "If the parties have not agreed upon a choice of law, Pennsylvania employs a two-step process to resolve choice-of-law questions."  *Atl. Pier Assocs., LLC v. Boardakan Rest. Partners*, 647 F. Supp. 2d 474, 487 (E.D. Pa. 2009) (citing *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir. 2007)).  First, the Court must determine whether there is any conflict between Pennsylvania and New York law.  If both would lead to the same result, there is no conflict, and Pennsylvania law applies.

        Under Pennsylvania law, the "action of replevin is founded upon the wrongful taking and detention of property and seeks to recover property in the possession of another.  *Valley Gypsum Co. v. Pa. State Police*, 581 A.2d 707, 710 (Pa. Commw. Ct. 1990).  To prevail, "the plaintiff must show not only title, but also the exclusive right of immediate possession of the property in question.  *Ford Motor Credit Co. v. Caiazzo*, 564 A.2d 931, 933 (Pa. Super. Ct. 1989).  Under New York law, "[t]o establish a claim for replevin, the plaintiff must prove two elements: (1) that plaintiff has a possessory right superior to that of the defendant; and (2) that plaintiff is entitled to the immediate possession of that property."  *See International Business Machines Corp. v. BGC Partners, Inc.*, No.

and seeks to recover property in the possession of another.  *Valley Gypsum Co. v. Pa. State Police*, 581 A.2d 707, 710 (Pa. Commw. Ct. 1990).  To prevail, "the plaintiff must show not only title, but also the exclusive right of immediate possession of the property in question.  *Ford Motor Credit Co. v. Caiazzo*, 564 A.2d 931, 933 (Pa. Super. Ct. 1989).

The Borrowers granted VAC a security interest in the collateral, which includes "all personal property" owned by the Borrowers, including the property used in their Checker's Drive In Restaurants.  The loan agreement stated that upon a default, "VAC shall have the right to take possession of the Collateral . . . and for that purpose VAC may enter upon any premises on which the Collateral . . . may be situated and remove the same therefrom."  The Borrowers defaulted on the loan agreements when they failed to make the monthly payments starting in November 2022, and Signature first demanded the payment of all obligations, and then demanded possession of the collateral.  Since the Borrowers defaulted on the loans, Signature has the right to take immediate possession of the collateral.  *See Susquehanna Commercial Finance, Inc. v. French*, No. 10-7481, 2011 WL 1743503, at *4 (E.D. Pa. May 5, 2011).

IV

Federal Rule of Civil Procedure 55(b)(2) authorizes a district court to enter a default judgment against a properly served defendant who fails to file a responsive

---

10-128, 2013 WL 1775367, at *9 (S.D.N.Y. Apr. 25, 2013).  Applying either law would lead to the same substantive result, there is no conflict and Pennsylvania law applies.

pleading.  *See Anchorage Assocs. v. V.I. Bd. of Tax Review*, 922 F.2d 168, 177 n.9 (3d Cir. 1990).  Three factors control whether a default judgment should be granted: (1) prejudice to the plaintiff if default judgment is denied; (2) whether the defendant appears to have a litigable defense; and (3) whether the defendant's delay is due to culpable conduct.  *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000).

All three *Chamberlain* factors support granting the motion.  First, denying the motion will prejudice Signature because a plaintiff "will be prejudiced absent a default judgment when a defendant fails to respond to the plaintiff's claims because the 'plaintiff will be left with no other means to vindicate his or her claims.'"  *United States v. Tran*, No. 21-730, 2022 WL 159734, at *2 (E.D. Pa. Jan 18, 2022) (quoting *United States v. Vo*, No. 15-6327, 2016 WL 475313, at *3 (D.N.J. Feb. 8, 2016)).  Nearly five months have passed since the Defendants were served, and they have not participated in this case at all, "portending an indefinite delay without default judgment."  *See id*; *see also State Farm Fire & Cas. Co. v. Hunt*, No. 14-06673, 2015 WL 1974772, at *4 (E.D. Pa. May 4, 2015).

The second factor—whether the Defendants have a litigable defense—favors entering a default judgment because the Defendants never answered, responded or otherwise participated in this litigation.  The Court may presume, therefore, that Defendants have no meritorious defense.  *See Joe Hand Promotions, Inc. v. Yakubets*, 3 F. Supp.3d 261, 271–72 (E.D. Pa. 2014) (adding "it is not the court's responsibility to research the law and construct the parties' arguments for them").

Finally, the third factor also weighs in favor of default.  A defendant's failure to engage in the litigation process can be considered culpable conduct, especially where

the Court is "unable to 'find [any] excuse or justification for default, apart from [the Defendants'] own culpability.'" *Penumella v. Pham*, 2023 WL 9004918, at *5 (E.D. Pa. Dec. 28, 2023) (quoting *Einhorn v. Klayman Produce Co., Inc.*, No. 13-1720, 2013 WL 6632521, at *4 (E.D. Pa. Dec. 17, 2013)).  Signature undertook extensive efforts to locate Mital Pandya and Jignesh Pandya, the sole member and shareholder of the non-individual defendants.  On one occasion, a process server "attempted to serve an individual believed to be one of the defendants," but the individual "fled in his car."  *See* (ECF No. 7).  The Defendants have not engaged in the litigation process, culpable conduct which weighs in favor of entering default judgment.  "[T]o conclude otherwise would be to reward the recalcitrant or the oppositional and uncooperative." *See Eastern Elec. Corp. of N.J. v. Shoemaker Constr. Co.*, 657 F. Supp. 2d 545, 554 (E.D. Pa. 2009).

## V

After granting the motion for default judgment, the Court must calculate the appropriate damages.  *See Rios v. Marv Loves 1*, No. 13-1619, 2015 WL 5161314, at *13 (E.D. Pa. Sept. 2, 2015).  "Courts may rely upon detailed affidavits submitted by the parties instead of holding an evidentiary hearing to determine damages on default judgment."  *J & J Sports Prods., Inc. v. Puentenueva*, No. 14-3226, 2014 WL 7330477, at *2 n.1 (E.D. Pa. Dec. 22, 2014) (citation omitted).

Signature seeks $2,354,734.86, with post-judgment interest accruing at the statutory rate, and its attached declaration from David McGowan, Signature's Vice President/Director of Portfolio Management, sufficiently establishes that amount as the proper calculation of damages.  (McGowan Decl. ¶¶ 5–105, ECF No. 16-3).  The

Borrowers defaulted under the terms of the loan agreement, and the Guarantors breached the guarantees. The total unpaid amount as of January 10, 2023 is $2,052,711.33, and accrued interest at the per diem rate of $983.79 from January 10 to November 13, 2023 totals $302,023.53. Thus, under the terms of the loan agreements and guarantees, the Defendants owe Signature $2,354,734.86.

The Court declines to grant Signature's request for replevin because Signature does not describe the collateral with any specificity. *See, e.g., ApplePie Capital, Inc. v. Sirois Ventures III, LLC*, No. 19-2719, 2020 WL 10058199, at *2–3 (M.D. Fl. Apr. 23, 2020). Signature says that the collateral "consists of substantially all of the tangible and intangible assets owned by the Borrowers . . . including, without limitation, all equipment and other assets owned by the Borrowers and located at each Checker's Drive-In Restaurant retail facility operated by each Borrower."[8] (McGowan Decl. ¶ 88). Moreover, since all the Checker's restaurants are apparently closed, Signature does not even know if any collateral remains. (*Id.* ¶ 92). As such, this request is denied without prejudice.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.

---

[8] The description provided in the Security Agreement also consists of boilerplate language listing numerous types of collateral without any specificity. (ECF 1-3, at 19).

11